# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| AHMED AWE, ) <br> ) <br>       **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> JANET NAPOLITANO, Secretary, U.S. ) <br> Department of Homeland Security; EMILIO ) <br> GONZALEZ, Director, U.S. Citizenship and ) <br> Immigration Services, and JOSE OLIVARES, ) <br> Field Office Director, USCIS, ) <br> ) <br>       **Defendants.** ) | Case No. 10-CV-323-TCK-FHM |

## OPINION AND ORDER

Before the Court is Defendants' Motion to Dismiss (Doc. 7).

**I.    Background**

Plaintiff Ahmed Awe ("Awe") has been a lawful permanent resident of the United States since November 21, 1968. On July 11, 1976, when Awe was eighteen years old, he was arrested for burglary and received a deferred two-year sentence. Approximately two and a half years later, on February 4, 1978, Awe was arrested for "drunkenness." This charge was later dismissed. On September 16, 1983, Awe was arrested for possession of marijuana with intent to distribute, possession of cocaine, and maintenance of a house where drugs were kept/sold. Awe entered a guilty plea to these charges and was sentenced to three years imprisonment. Two months later, Awe was arrested for unlawfully possessing a controlled drug, but this charge was dismissed. Awe subsequently received a pardon from the Governor of Oklahoma for the offenses carrying prison time.

On June 27, 2007, Awe filed an Application for Naturalization (Form N-400) ("Application") on the basis that he had been a lawful permanent resident of the United States for

more than five years and was otherwise eligible for naturalization. Awe appeared for examination on the Application on June 17, 2008. During the examination, Awe alleges that he disclosed his 1983 arrest for drug charges and provided a Tulsa Police Department Criminal History letter, which showed the arrests prior to 1983. On August 28, 2009, Awe received notice that he was ineligible for naturalization because of his arrest record and his purported failure to disclose his arrests as a teenager.

Awe filed a Request for Hearing on a Decision in Naturalization Proceedings (Form N-336), seeking review of the denial of his bid for naturalization before the United States Citizenship and Immigration Services ("USCIS"). On January 26, 2010, USCIS upheld its original decision to deny Awe's Application, citing "poor moral character" and his prior arrest record as the basis for the denial. On May 20, 2010, Awe filed a Petition for Review of Denial of Naturalization Application ("Petition") before this Court pursuant to 8 U.S.C. 1421(c), requesting a de novo hearing on his Application and that the Court remand the matter to Defendants with an instruction to grant the Application. (Pet. §§ II, VI.) Awe maintains his Application should be granted because he "is a person of good moral character within the meaning of 8 U.S.C. § 1427[,] is otherwise eligible for naturalization[,] has not been arrested or charged with any offense during the statutory period[,] [and his Application] cannot be denied solely on the basis of his criminal record from 1983 (and before)." (Pet. § V, ¶ 20.)

On August 27, 2010, approximately three months after Awe filed his Petition, the United States Department of Homeland Security issued a Notice to Appear, and Awe was placed in removal proceedings. (*See* Notice to Appear, Ex. 1 to Defs.' Mot. to Dismiss.) Specifically, the Notice to Appear states that Awe is "subject to removal from the United States" pursuant to the following:

> Section 237(a)(2)(B)(I) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign county relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

(*Id.* at 2.) Defendants now seek to dismiss Awe's Petition pursuant to Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), arguing that the filing of removal proceedings against Awe divested this Court of jurisdiction to hear Awe's Petition. Alternatively, Defendants move to dismiss Awe's Petition pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)") for failure to state a claim because this Court cannot provide effective relief to Awe.

## II.     Motion to Dismiss Standards

Federal courts are courts of limited jurisdiction and may exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F. Supp. 279, 280 (D. Kan. 1995). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Winnebago Tribe of Neb. v. Kline*, 297 F. Supp. 2d 1291, 1299 (D. Kan. 2004). When federal jurisdiction is challenged, plaintiff bears the burden of showing why the case should not be dismissed. *Id*.

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction generally take one of two forms. *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction." *Id*. "In reviewing a facial attack, the district court must accept the allegations

in the complaint as true." *Id*. "Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Id*. In reviewing a factual attack, a court "may not presume the truthfulness of the complaint's factual allegations, [but] has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts.'" *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). In the instant case, Defendants' Rule 12(b)(1) motion does not challenge the facts as alleged in the Petition and therefore represents a facial attack to Plaintiff's Petition. *See Rahman v. Napolitano*, No. 09-3437, 2010 WL 2777271, at *2 (6th Cir. July 13, 2010) (construing defendants' Rule 12(b)(1) motion to dismiss, which argued petition should be dismissed pending removal proceedings, as facial attack).

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether the plaintiff has stated a claim upon which relief may be granted. The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544)). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be

4

true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context," and that whether a defendant receives fair notice "depends on the type of case." *Id.*

## III.  Relevant Law Regarding Naturalization and Removal

"Before 1990, naturalization authority and removal authority were vested in different branches of government, with naturalization being the province of the courts and removal the province of the executive acting through the Attorney General." *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (internal citations omitted). This system made it possible for naturalization and removal proceedings to proceed simultaneously, which would sometimes give rise to a race "between the alien to gain citizenship and the Attorney General to deport him." *Id.* (citing *Shomberg v. United States*, 348 U.S. 540, 544 (1955)). In 1990, however, Congress amended the Immigration and Nationality Act ("INA") so to "unif[y] naturalization and removal authority in the executive." *Ajlani*, 545 F.3d at 236. Specifically, Congress gave the Attorney General the "sole authority to naturalize persons as citizens of the United States." 8 U.S.C. § 1421(a). Congress

5

limited the Attorney General's authority in 8 U.S.C. § 1429 ("Section 1429"), however, which provides in relevant part:

> [N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no application for naturalization shall be considered by the Attorney General if there is pending against the applicant a removal proceedings pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act. . . .

8 U.S.C. § 1429.

The 1990 amendments also reserved "a measure of naturalization jurisdiction for the courts in two circumstances: denial and delay." *Ajlani*, 545 F.3d at 236. Pursuant to 8 U.S.C. § 1421(c) ("Section 1421"), which forms the basis for Awe's Petition,

> A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

Similarly, if "there is a failure to make a determination" on the naturalization application within 120 days after the applicant's required examination, the alien can ask the district court "for a hearing on the matter." 8 U.S.C. § 1447(b) ("Section 1447(b)"). The district court may then "either determine the matter or remand the matter." *Id.*

Defendants cite Section 1429 in support of their Motion to Dismiss, arguing that it mandates dismissal of Awe's Petition because (1) the filing of removal proceedings divested this Court of jurisdiction to hear Plaintiff's Petition, and (2) the Court cannot grant effective relief to Plaintiff because it cannot order the Attorney General to do something which is precluded by the mandate of Section 1429. Awe objects, first citing this Court's authority to review naturalization decisions

6

under Section 1421(c). Awe additionally contends that Section 1429 fails to explicitly divest this Court of jurisdiction, as it only states that the "*Attorney General*" is unable to consider an application for naturalization during the pendency of removal proceedings. Finally, Awe argues that when, like here, the removal proceedings are initiated after a petition is filed, the district court retains all authority and jurisdiction to grant the requested relief.

## IV. Discussion

The issue before the Court is whether Section 1429, which limits the Attorney General's power to consider naturalization petitions during the pendency of removal proceedings, similarly limits a district court's jurisdiction to review naturalization petitions and/or leaves a petitioner without any effective remedy from the district court. The Tenth Circuit has yet to address this specific issue, and the Court must therefore look to other circuits for guidance. In so doing, it becomes apparent that there exists a split in authority, as courts confronted with this issue have adopted one of two prevailing views. Some district court decisions, which are relied upon by Awe, have rejected the arguments advanced by Defendants and held that Section 1429 precludes only the Attorney General from considering a petition for naturalization by an alien against whom removal proceedings are pending and does nothing to affect the district court's jurisdiction or remedies available to it. *See Gonzalez v. Napolitano*, 684 F. Supp. 2d 555, 560-63 (D.N.J. 2010); *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 818 (D.N.J. 2008); *Grewal v. Ashcroft*, 301 F. Supp. 2d 692, 695-97 (N.D. Ohio 2004); *Saad v. Barrows*, No. 03-1342, 2004 WL 1359165, at *5-6 (N.D. Tex. June 16, 2004); *Ngwana v. Attorney Gen.*, 40 F. Supp. 2d 319, 321-22 (D. Md. 1999). These courts generally rely on the plain language of Section 1429 and reason that if Section 1429 divested district courts of authority to review denials of naturalization applications, the Immigration and

7

Naturalization Service ("INS") could effectively circumvent judicial review of naturalization applications by initiating removal proceedings. *See Gonzalez*, 684 F. Supp. 2d at 560-61; *Kestelboym*, 538 F. Supp. 2d at 818; *Grewal*, 301 F. Supp. 2d at 696-97; *Ngwana*, 40 F. Supp. 2d at 321-22.

In contrast, the Second, Fifth, and Sixth Circuits have dismissed petitions seeking review of a naturalization decision when removal proceedings are pending, holding that said proceedings limit the court's review pursuant to Section 1421 or Section 1427 and circumscribe the availability of effective remedies. *See Ajlani*, 545 F.3d at 239-241 (holding that the priority afforded removal proceedings by Section 1429 limits the courts' authority to grant naturalization pursuant to Section 1421 or Section 1427) ("[W]e think district court authority to grant naturalization relief while removal proceedings are pending cannot be greater than that of the Attorney General.") (finding that district court properly dismissed plaintiff's request for review of naturalization application for failure to state a claim); *Saba-Bakare v. Chertoff*, 507 F.3d 337, 340 (5th Cir. 2007) (stating that "[Section 1429] requires that [plaintiff] wait until the termination of the removal proceeding before either a district court or the USCIS entertains a question regarding his naturalization application") (affirming district court's dismissal of petition seeking de novo review of naturalization application pursuant to Section 1421(c)); *Zayed v. United States*, 368 F.3d 902, 906-07 (6th Cir. 2004) ("The effect of [Section 1429], in our view, is to limit the scope of the court's review and circumscribe the availability of effective remedies, but not to oust the district court of jurisdiction.") ("[T]he restraints that [Section 1429] imposes upon the Attorney General prevent a district court from granting relief under [Section1421(c)] so long as removal proceedings are pending.") (affirming district court's dismissal of plaintiff's petition for review of naturalization application); *see also De Lara Bellajaro*

8

*v. Schiltgen*, 378 F.3d 1042, 1048 (9th Cir. 2004) (citing *Zayed* with approval); *see also Rahman*, 2010 WL 2777271, at *543 n. 4 (following *Zayed* and noting that district court opinions going other way are "against the weight of appellate authority").

The Court agrees with this appellate authority. While the text of Section 1429 does not explicitly divest this court of *jurisdiction* during the pendency of removal proceedings, *see* 8 U.S.C. § 1429 (stating "no application for naturalization shall be considered by *the Attorney General* if there is pending against the applicant a removal proceedings"); *Zayed*, 368 F.3d at 906 (finding that Section 1429 "simply has no bearing on the district court's *jurisdiction* to review the administrative denial of a naturalization application of an alien against whom removal proceedings have been initiated"), it necessarily "circumscribes the availability of effective remedies," *Zayed*, 368 F.3d at 906. Specifically, even if the Court were to conduct a de novo review of the decision to deny Awe's naturalization application, and even if the Court were to determine that the decision was in error, the Court cannot grant Awe the relief he seeks. "The exclusive power to naturalize aliens rests with the Attorney General, . . . and [Section 1429] bars the use of that power while removal proceedings are pending." *Id.* (additionally noting the "district court could not properly have entered an order granting the application without reference to the Attorney General [since] Congress . . . decided that it would be the Attorney General who should have 'sole authority to naturalize persons'") (citing 8 U.S.C. § 1421(a)). Therefore, because Section 1429 precludes the Attorney General from granting naturalization to Awe due to the pending removal proceedings, Awe cannot currently secure such relief from this Court. *Ajlani*, 545 F.3d at 238 (noting same); *see Zayed*, 368 F.3d at 906 n.5 (questioning holding in *Ngwana*, 40 F. Supp. 2d at 322, where district court ordered INS to grant

9

application for naturalization despite removal proceedings, by stating "[w]e are something of a loss . . . to understand how judicial fiat can overcome the statutory bar of [Section 1429]").

Further, the Court is not persuaded by Awe's argument that the timing of the removal proceedings, which were initiated after he filed suit in this Court, necessitates rejection of Defendants' Motion to Dismiss. While the Court notes Awe's concern that under the current statutory regime, the Government might initiate removal proceedings simply to obstruct judicial consideration of naturalization applications, this concern is most appropriately addressed to Congress, and not this Court. *See Saba-Bakare*, 507 F.3d at 341 (noting that equitable concerns regarding statutory framework governing immigration and naturalization should be addressed to Congress). Further, both the Sixth and Fifth Circuits dismissed petitions under similar circumstances – namely, where the removal proceedings were initiated *after* the plaintiff filed for relief in district court. *See Zayed*, 368 F.3d at 904, 907 (removal proceedings commenced a "few weeks" after plaintiff filed petition for review with district court) ("Regardless of when removal proceedings are initiated, the Attorney General may not naturalize an alien while such proceedings remain pending."); *Ajlani*, 545 F.3d at 232, 238 (noting that, like in *Zayed*, removal proceedings were initiated after plaintiff filed for judicial relief) (plaintiff filed suit on October 30, 2006 and removal proceedings formally commenced on December 20, 2006) (finding that district court could not grant relief to plaintiff pending said removal proceedings).

Therefore, for the reasons outlined herein, the Court finds that Awe's petition is subject to dismissal without prejudice for failure to state a claim upon which relief can be granted.[1] *Zayed*,

---

[1] Because the Court finds that Section 1429 does nothing to divest this Court of its jurisdiction, the Court finds dismissal appropriate under Rule 12(b)(6), and not Rule 12(b)(1).

368 F.3d at 906-07 ("We believe that the dismissal [without prejudice] of [plaintiff's] petition for review must be affirmed. The fact that the statute precludes the relief sought requires this result."); *Ajlani*, 545 F.3d at 241 (affirming dismissal for failure to state a claim upon which relief could be granted).

V.  **Conclusion**

For the reasons outlined herein, Defendants' Motion to Dismiss (Doc. 7) is GRANTED and this matter is dismissed without prejudice. A Judgment of Dismissal will be issued forthwith.

**IT IS SO ORDERED this 6th day of September, 2011.**

_____
**TERENCE KERN**
**United States District Judge**